# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA SMITH and<br>JAMES SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>I-FLOW CORP.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 09 C 3908 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Amanda Smith and James Smith have sued I-Flow Corporation. (They originally sued Hospira, Inc. and Abbott Laboratories as well but recently dropped them as defendants). They allege that Mrs. Smith suffered personal injuries to the cartilage in her left shoulder joint as a result of using a pain pump that injected the anesthetic drug Marcaine into that joint. I-Flow manufactured and distributed the pain pump. The Smiths allege that it was unreasonably dangerous.

I-Flow has moved to strike the Smiths' request for punitive damages. For the reasons stated below, the Court denies I-Flow's motion.

### Background

This suit concerns injuries that Amanda Smith sustained allegedly from her use of a PainBuster pain pump, which I-Flow designed, manufactured, marketed and distributed. The Smiths reside in Michigan. I-Flow is a Delaware corporation with its

principal place of business in Lake Forest, California.

On January 20, 2006, Mrs. Smith underwent arthroscopic surgery to her left shoulder at a hospital in Michigan. During the surgery, her doctor affixed a PainBuster pain pump to her shoulder. The pain pump continuously injected her with the anesthetic Marcaine through a catheter.

Mrs. Smith eventually suffered serious and permanent cartilage damage. Specifically, she now suffers from an irreversible condition called chondrolysis, the complete or nearly complete loss of cartilage in the shoulder joint. The Smiths allege that this was the result of the pain pump's continuous injections of Marcaine into her shoulder joint. They seek both compensatory and punitive damages.

In support of their request for punitive damages, the Smiths allege that manufacturers of pain pumps, including I-Flow, manufactured and distributed them and marketed them as safe without doing anything to determine their safety and without disclosing that no testing had been done to ascertain their safety for use in the shoulder joint. The Smiths allege that the Food and Drug Administration considered and rejected pain pumps for use in the shoulder joint space due to the absence of studies but that manufacturers promoted them for that use nonetheless. Starting in 2004, the Smiths allege, scholarly studies were published indicating the pain pumps could have deleterious effects on shoulder cartilage, including causing chondroylsis. Despite this, they allege, pain pump manufacturers, including I-Flow, continued to sell and market them for use in the shoulder joint.

In July 2010, the Smiths sought leave to file a second amended complaint that included additional and more detailed allegations supporting their request for punitive

damages. The Court denied their motion largely because it considered the additions unnecessary.

I-Flow advances two arguments in support of its motion to strike the Smiths' punitive damages claim. First, it argues that Michigan law, which bars punitive damages, governs whether they are recoverable in this case. Second, I-Flow argues that the Smiths have not satisfied the pleading requirements imposed by Federal Rule of Civil Procedure 8.

## Discussion

**1.      Availability of punitive damages**

The Smiths argue that California law governs the availability of punitive damages. California law permits punitive damages in product liability cases, including actions based on strict liability in tort. *See Hasson v. Ford Motor Co.*, 32 Cal. 3d 388, 185 Cal. Rptr. 654 (1982).

I-Flow contends that Michigan law governs the availability of punitive damages. In Michigan, "punitive damages may not be imposed," subject to specific statutory exceptions, none of which the Smiths claim apply in this case. *See McAuley v. General Motors Corp.,* 457 Mich. 513, 519-20 & n.8, 578 N.W.2d 282, 285 & n.8 (1998).

A district court sitting in diversity applies the choice of law rules of the state in which it sits. *Malone v. Corrs. Corp. of Am.,* 553 F.3d 540, 543 (7th Cir. 2009). Illinois courts apply the "most significant contacts" test to resolve conflicts of law. *Miller v. Long-Airdox Co.,* 914 F.2d 976, 978 (7th Cir. 1990). Choice of law is addressed on an issue-by-issue basis, and as a result, different states' law may govern different issues in

a particular case.  *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 161, 879 N.E.2d 893, 901-02 (2007).

Under Illinois law, there is a strong presumption that the law of the state where the injury occurred governs in a personal injury case like this one.  *See id.* at 163-64, 879 N.E.2d at 903.  This presumption "may be overcome only by showing a *more* or *greater* significant relationship to another state."  *Id.* at 163, 879 N.E.2d at 903 (emphasis in original).  In making that assessment, Illinois courts consider the principles set forth in sections 6 and 145 of the Restatement (Second) of Conflicts of Laws.  *See id.* at 164, 879 N.E.2d at 903.

Under section 145(2) of the Restatement, a court considers where the injury occurred; where the conduct that caused the injury occurred; the domiciles of the parties; and where the parties' relationship is centered.  *Id.* at 160, 879 N.E.2d at 901.  A court does not simply "count contacts" but rather considers them in light of the general principles identified in section 6 of the Restatement.  *Id.* at 169, 879 N.E.2d at 906.  The principles in section 6 of the Restatement considered in this situation are the relevant policies of the forum; the relevant policies of the interested states and the relative interests of those states in the determination of the particular issue; and the basic policies underlying the particular field of law.  *See id.* at 170, 879 N.E.2d at 906-07.

The relationship between the Smiths and I-Flow is centered in Michigan, where Mrs. Smith had her surgery.  The domicile factor does not point to any one state: the Smiths are citizens of Michigan, and I-Flow's principal place of business is in California.

4

The two most significant contacts in a tort case are the place where the injury occurred and the place where the conduct causing the injury occurred. *Miller,* 914 F.2d at 978. The injury in this case occurred in Michigan, where the Smiths live and Mrs. Smith chose to undergo surgery. The conduct that caused the injury, however, took place in a state other than Michigan. Specifically, the Smiths allege that I-Flow's decisions regarding marketing and distribution of its pain pumps, and its activities that they contend warrant imposition of punitive damages, took place in California, where I-Flow is headquartered. *See* Pl. Resp. in Opp. to Def.'s Mot. to Dismiss (dkt. no. 101) at 7.

The Court next considers the policy factors identified in section 6 of the Restatement. The purpose of punitive damages is distinct from that underlying compensatory damages. Specifically, the purpose of punitive damages "is a purely *public* one. The public's goal is to punish wrongdoing and thereby to protect itself from future misconduct, either by the same defendant or other potential wrongdoers." *Adams v. Murakami*, 54 Cal. 3d 105, 110, 813 P.2d 1348, 1350 (1991) (emphasis in original); *see also, e.g., Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 276, 641 N.E.2d 402, 407 (1993) ("Compensatory damages are designed to make amends for the injuries suffered by the plaintiff, whereas punitive damages are intended to punish the wrongdoer and serve as a deterrent to antisocial behavior in the future"). Conversely, the purpose of a state's decision to disallow punitive damages is to protect its residents from excessive liability. *See In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F.2d 594, 617 (7th Cir. 1981). More generally, "the purpose of a decision to

5

impose or not impose punitive damages has to do with regulation of conduct." *Id.*

This suggests that the state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred. Indeed, that is what the Restatement suggests (in a passage quoted in *Townsend*), though it cautions against overemphasis of this factor.:

> [A]n important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved. If this purpose is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries . . . . In the latter situation, the state where the injury occurred would seem to have a greater interest than the state of conduct. This factor must not be over-emphasized. To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person. Undoubtedly, the relative weight of these two objectives varies somewhat from rule to rule, but in the case of a given rule it will frequently be difficult to determine which of these objectives is the most important.

Restatement (2d) of Conflict of Laws § 145, cmt. c (1971), *quoted in Townsend*, 227 Ill. 2d at 174, 879 N.E.2d at 909. This passage from the Restatement is appropriately hedged because it addresses the full gamut of rules of tort law. In this case, however, the Court is dealing with a particular rule, namely the availability of punitive damages. This is a situation in which the overwhelmingly predominant purpose is punishment, not compensation.

The Court concludes that the interest of the state where I-Flow is headquartered in regulating the conduct of its resident corporations far outweighs whatever interest Michigan may have in protecting non-resident corporations against excessive liability. California has a significant greater interest than Michigan in deciding whether to punish

6

a tortfeasor that operates, and engaged in the allegedly wrongful conduct, within California's boundaries,

For these reasons, the Court concludes that with respect to the issue of the availability of punitive damages, the Smiths have rebutted the presumption in favor of applying the law of the state where Mrs. Smith's injury took place. *Accord, American Intern. Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2010 WL 2674656, at *17 (N.D. Ill. June 30, 2010).

I-Flow argues that the Illinois Supreme Court rejected a similar argument in *Townsend*. *Townsend*, however, is distinguishable. In that case, the "place of wrongdoing" factor pointed to the laws of two different states, because the defendant's claim of contributory negligence brought plaintiff's alleged wrongdoing (i.e., his negligence) came into play. *See Townsend*, 227 Ill. 2d at 168-69, 879 N.E.2d at 906. One of those states, Illinois, was the state where the plaintiff's injury had occurred. Thus both of the most significant contacts pointed, at least partly, toward the place of injury, leaving no persuasive argument to rebut the presumption in favor of applying that state's law. In the Smiths' case, by contrast, there is no claim of any sort of fault on the plaintiffs' part. Thus unlike in *Townsend*, one of the two most significant contacts points, in this case, away from applying (at least on the issue of punitive damages) the law of the place where the plaintiff's injury occurred.

In sum, the Court determines that the Smiths have rebutted, in this particular situation, Illinois' strong presumption that the law of the place of the injury governs. With respect to the particular issue of punitive damages, Michigan has only a minimal interest in whether a corporation that does not reside within Michigan's borders should

7

or should not be assessed punitive damages based on conduct that likewise occurred outside that state. This is far outweighed by California's interest in regulating the conduct of its corporate citizens. The strength of California's interest in this particular issue is sufficient to rebut Illinois' strong presumption in favor of applying the law of the place of the plaintiff's injury.

That said, because there is little precedent on this issue, prudence suggests that the Court should consider structuring the trial to attempt to preserve the choice of law issue for appellate review. The Court therefore proposes to bifurcate the issue of punitive damages from the issues of liability and compensatory damages. At the next status hearing, counsel on both sides should be prepared to address this point.

**2.    Sufficiency of allegations**

Defendant argues in the alternative that the Court should strike the Smiths' punitive damages request because their supporting allegations are insufficient. The particularized pleading standard of Federal Rule of Civil Procedure 9(b) does not apply to allegations supporting a claim of punitive damages. And even after the Supreme Court's recent changes to the law governing federal pleading, "heightened fact pleading of specifics" is not required outside the scope of Rule 9(b). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). That said, Rule 8(a) requires a plaintiff in every case to allege facts sufficient to "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

In California, punitive damages may be awarded in a product liability case when the defendant acted maliciously, a term that covers "intentionally performing an act from

8

which [the defendant] knows, or should know, it is highly probable that harm will result."
*Ford Motor Co. v. Home Ins. Co.*, 116 Cal. App. 3d 374, 381, 172 Cal. Rptr. 59, 63 (1981). "[C]onscious disregard of safety of consumers and others" may constitute malice in a product liability case. *Ehrhardt v. Brunswick, Inc.*, 186 Cal. App. 3d 734, 741, 231 Cal. Rptr. 60, 64 (1986).

The Smiths have adequately alleged a basis for an award of punitive damages. Specifically, their complaint goes well beyond merely alleging in a conclusory way how and why they contend I-Flow acted with malice. Their allegations plausibly give rise to a viable claim for punitive damages.[1]

### Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss plaintiff's request for punitive damages [docket no. 94].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 29, 2010

---

[1] The Court disagrees with I-Flow's argument that the Smiths are merely attempting to assert a private right of action under the Food, Drug, and Cosmetics Act. There is a vast difference between suing for a violation of that Act and merely relying on evidence concerning FDA proceedings together with other evidence to support a claim for relief.

9